## SMEDLEY *v.* WILLIAMS.

Where one consigns goods and receives an advance thereon of money from the consignee, his control over them has terminated, so that he can impose no new terms upon the consignee under such circumstances, who must be regarded as *quasi* a purchaser. The consignee who thus makes advances is bound no further to the consignor, than to use all due and proper diligence, skill, and attention in selling the goods at the best rates the market affords, in the manner required by the established usages of trade.

It is an established principle in the law of principal and factor, that when the latter renders an account of sales, the former should with all reasonable diligence specify in what particular such account is exceptionable. If the principal retains the account any unreasonable length of time, he is concluded from making objections, but must be considered as acquiescing in the report of the factor's transactions.

Where one has consigned goods to his factor and received advances thereon, he cannot withdraw them, without the payment or an offer to pay, not only the amount of advances, but the commissions the factor would have been entitled to receive if a sale had been effected.

As a general rule, if a principal consign goods to his factor for sale at a given rate of commission, on which he receives advances in anticipation of sales, he cannot at his mere pleasure withdraw his goods from the sale of the goods from the factor, on the repayment of advances and interest.

*March* 24. THIS was a bill in equity, filed by Smedley against Matthew and Richard Williams, trading under the name and firm of Williams & Brother. It was stated that the plaintiff was engaged in the business of manufacturing various articles mentioned in the bill, and that the defendants were commission merchants, residing in Philadelphia; that, in the month of February, before filing the bill, the plaintiff made an agreement with the defendants, by which he agreed to place all the goods he should manufacture in their hands to sell for him on his account, they agreeing to advance upon the goods so consigned to them the amount of fifty per cent. at the time of the consignment, and on request to give the plaintiff an account of what sales they made. It was stated in the bill that the agreement was in writing, and in the possession of the defendants. The bill charged that, under said agreement, the plaintiff consigned to the defendants, goods of his manufacture at various times, a description of which was attached to the bill; and received the advances agreed upon; and, on the 18th of October, an account was furnished. That the defendants had, on the filing of the bill, $2000 worth of the goods in their possession, and had had them all summer, but had not sold them for him, although he could have easily disposed of them, had they been in his possession; but, in consequence of the goods having been carelessly and negli-

gently kept by the defendants, many were moth-eaten and otherwise deteriorated in value by such neglect.   And finding that the defendants did not sell the goods as they had contracted with the plaintiff, and as they professed their inability to make further advances on the goods which he had manufactured, and having over $2000 worth of his goods on hand, independent of those in the hands of the defendant, which he could not, through them, have sold, the defendants refusing to receive the same from him, as they had agreed : he determined to annul the contract with the defendants, and on a settlement of accounts between them and him, and payment by the plaintiff to the defendants of all that on a settlement of accounts might be justly due from him to them, to remove all his goods which were in their hands.

It was further stated that notice thereof was given to said defendants ; that the plaintiff called upon the defendants, and demanded an account and a delivery of the goods, and professed his willingness and readiness to pay all that he might owe them, and if they were not then ready, that they would inform him when they would comply with his demand.   But they gave him no reply, except that they would not account before the 1st of January, and did not accede to his demand, and have not accounted with him nor delivered to him his goods, though they knew they were not sold, and if not sold would be deteriorated in value, although he was willing to pay them what they might reasonably demand.   It was alleged by the plaintiff, that he had in all things complied with his contract with the defendants strictly, and had sold his goods to no one else, and when he called upon them for further advances on goods, they alleged they were unable to make them, or to make sale of them, and then advised him to resort to another mode of effecting his sales.   Then he left them, and did adopt another mode of selling goods, and that, on sales thus made, the defendants pretended they were entitled to the same commissions as if made by them ; and demanded a statement from him of all the goods he had thus sold.

It was further alleged in the bill, that, after the notice so given, the defendants did offer some of the goods for sale at ruinous prices ; and charged that the plaintiff believed it to be the intention of the defendants to make sale of the goods in their possession, at a sacrifice, by auction or otherwise, and thereby to injure him, the plaintiff, unless restrained by an injunction from so disposing of them.

It was then prayed that the defendants be required to answer numerous interrogatories, and that an account might be taken of

the dealings between the parties, and that the defendants be decreed to deliver to the plaintiff all his goods in their possession, in good order and condition, and be held responsible for any damage he might have sustained, and on payment by the plaintiff upon an account taken of such sum as he might, in the judgment of the Court, be obliged to pay to them for their commission, &c., which the plaintiff professed his willingness to do, they being held responsible in account to him for any damage he might suffer by reason of their refusal to give him his goods upon demand; and that the defendants might be restrained by an injunction from selling any of his goods in their possession, or under their control, until the judgment of the Court in the premises; and the bill concluded with a prayer for general relief.

To this bill there was an answer by the defendants, in which it was admitted the plaintiff was a manufacturer, and that an agreement was entered into by them with the plaintiff, as stated in the bill, as to the sales, and the advance of fifty per cent.; but it was alleged there was no agreement as to when an account should be furnished of the sales, although they considered themselves bound to render such account at the usual times, which generally were monthly or quarterly, as might be convenient to the parties; that the agreement was partly in writing, a copy of which was annexed to the answer. It was admitted that the complainant, in the September previous, had attempted to revoke or annul it by the notice mentioned in the bill. That, upon the receipt of said notice, and after the threats of the complainant to act as therein expressed, the defendants did decline to furnish a copy of said agreement demanded. It was admitted by the answer that goods were consigned, of the plaintiff's manufacture, at various times, as alleged in the bill; and that advances were made by them upon said consignments as agreed upon, and to nearly twenty-five per cent. more than the agreement required upon the value of said goods, as ascertained by the sales; and the account furnished by them attached to the bill was correct. It was further alleged in the answer that the defendants did not know exactly the value of the goods so assigned, and remaining in their possession, but they did not value them at more than sufficient to indemnify them for the balance of their account against the plaintiff. It was averred by the defendants in their answer that they had made every exertion to have the goods disposed of, in this and other markets, according to their agreement with the complainant, and that sales have been made as fast as could have been expected under the circumstances,

and that the complainant never expressed any dissatisfaction on this point until recently; that it was the original agreement between them that the complainant should manufacture such description of goods as should be found suitable, and such as the defendants should request; that they had orders for a particular kind of goods, and requested the complainant to furnish them, but that the complainant failed to do so, and fill such orders, but would continue to send them such goods as the market was glutted with, which could not be readily disposed of, and this was a frequent subject of complaint on their part; and in the answer all carelessness and negligence was denied.

It was denied that they refused to receive goods on consignment, as charged in the bill, or sell the same, or to make advances upon the same in pursuance of their agreement. It was admitted that they received the notice, and that the complainant did call and demand an account immediately, and a redelivery of his goods, and professed a willingness to pay all that he might owe them, and that there was at that time a dispute between the parties as to certain charges and commissions claimed by them. And that they had rendered accounts to the complainant which had been brought up to a recent date, and when called upon for a further account, they informed the complainant it would be difficult and inconvenient to prepare and render such an account as he required, as some of the goods were in Boston, and that the pressure of business at the close of the year was great. It was admitted that in October the plaintiff required them to make advances upon goods which had already been consigned to them, and advanced upon, and that they declined so doing; and at the urgent solicitation of the plaintiff they gave him permission to sell some of his goods, he having informed them that he could dispose of them at retail about the city; but it was upon the express agreement that the plaintiff should render accounts to them of all such sales, and that they should be allowed their regular commissions upon such sales; and that they expressly retained their right to revoke this permission, and that it was not in any way to interfere with the prior written agreement; and that they gave the complainant notice to give them an account of such sales, but that he refused so to do, or to give them their commissions. It was admitted they had made sale of a small amount of those goods, but at usual prices, after the notice, and such as had been approved by the plaintiff on previous accounts. The interrogatories were all then answered.

The case was referred to a Master to take an account between

the parties, and to take proofs; also to report to the Court the state of their accounts in relation to the matters alleged in the bill and answer.

The Master made a report, and the questions decided, arose on exceptions to the Master's report.

The principal exceptions were, that the Master had charged the defendants with the goods consigned at the invoice price, and with all the goods in their hands unaccounted for at the time of rendering the last account, and that the Master had not allowed the defendants commissions upon all the goods sold by the complainant, as agreed upon by the parties.

The cause was argued by Mr. *Tenner* for the plaintiff, and Mr. *N. B. Brown* for the defendants.

The opinion of the Court was delivered by

KING, President.—The plaintiff rests his claim to recover in the present cause upon three grounds. First, that the defendants had sold the goods consigned at a less price than that expressly limited. Second, that, admitting no express limitation of price is established by the proof, still the goods were sold at less than the market value. And, third, that the defendants had refused to furnish accounts of sales, and deliver to him the remainder of the goods unsold; making themselves by this act chargeable as purchasers of the goods so unsold and detained.

To sustain the first proposition, the plaintiff relies chiefly on the fact, that in all the invoices which accompanied the goods, the prices were carried out, and that upon the aggregate sum of those invoices, the defendants had agreed to advance, and did advance him fifty per cent. Hence it is contended, that, when goods are consigned by a manufacturer to a commission merchant on a stipulation that the latter should make agreed advances on the invoice value of the goods, this was equivalent to instructions given by the manufacturer and received by the commission merchant, that the goods should not be sold at less than the invoice prices. But I think it cannot be shown that this construction was ever given to such a contract by a Court of justice; nor has it been established by the known usages of trade; which, when fixed and universal in the place where a contract is made, form a part of it.

The rule seems to be this, that an invoice of merchandise consigned, in which the prices are carried out, is only to be regarded as instructions to the consignee, of the estimated value of the pro-

perty by the consignor; but does not interdict him from selling at the ordinary and usual market rates, although these should be less than the invoice prices. If the consignor. desires to limit the price at which his goods are to be sold, he should say so in express terms, and if he omits to do so, the consignee has the right to consider the sale of the goods as referred to his sound discretion; and if that is fairly and honestly exercised, the consignor has no reclamation against the consignee, because the goods were forwarded to a market in which the invoice prices could not be obtained. And this rule specially applies in a case like the present, when advances to the amount of fifty per cent. of the value of the consigned goods have been made; for reason and justice indicate that the consignee should have the right to reimburse himself, by selling at the prices which the market would command, unless he binds himself by an express stipulation to keep the goods on hand, and lock up his own advanced capital until there should be a change so favourable in the market as to enable him to make sale at the invoice prices. In the present case, there exists a cogent reason why the prices were carried out in the invoice, without supposing it to have been intended as a limitation. Unless the goods came accompanied with an estimated value, there was no means of ascertaining the advances which were to be made by the agreement, being fifty per cent. of the value of the goods consigned.

There is no doubt but that such a course of dealing may exist between consignor and consignee as would restrain the latter from selling at less than the invoice prices without further advice; but all such cases must depend on their own special circumstances, such as the mutual course of previous dealings between the parties, the usages of the particular business, &c. All we intend to decide in the present case is, That where a manufacturer consigns goods to a commission merchant, who makes advances in anticipation of sales, accompanying the invoice of such a consignment with a statement of the prices, this does not of itself establish such prices as the limit beneath which the consignee should not sell. The consignment of goods on which advances are asked and received involve the right in the consignee to sell the goods in the usual and accustomed manner, and at the regular market rates, in order to the closing of the transaction, and for the reimbursement of his advances. And where the consignor does not desire to subject himself to such liabilities, he should make special arrangements to meet his own views in relation thereto.

In the present case, there is no sufficient proof of any special contract not to sell at less than the invoice prices.

But it is further alleged that, after the consignment of the goods, instructions were given by the consignor to the defendants, limiting the prices at which the goods should be sold. This the consignor could not legally do after consigning his goods and receiving advances thereon; for his authority over them in this respect terminated. He could impose no new terms on his consignee under such circumstances, who, from the fact of having made such advances, must be regarded as a *quasi* purchaser; and such advancing consignee is bound no further to the consignor than to use all due and proper diligence, skill, and attention in selling the goods thus consigned, at the best rate the market affords, and in the manner required by the established customs and usages of trade.

In reference to the second proposition contended for by the plaintiff's counsel, that, admitting the defendants not to have been limited as to price in making sale of the consigned goods, yet they had sacrificed them for prices beneath the market rates, there appear to be two facts which, even on this ground, are decisive of the case against the plaintiff. For it seems that the defendants, on the 18th of October, 1847, rendered their account of sales to the plaintiff, in which he was distinctly apprised of the prices at which the goods were sold; the same which he now complains were sacrificed. This account he held until the 26th of November following, not only without objection, but having in the mean time made new consignments, and received new advances thereon from the defendants.

It is a well settled rule in the law of Principal and Factor, that when the latter renders his accounts of sales *to* the former, the principal should, with all reasonable diligence, signify in what particulars he considers them exceptionable. But if he retains the accounts any unreasonable length of time, he is concluded from objecting that the goods were sold at insufficient prices. But when, in addition to such unreasonable delay, the principal continues to deal with the factor on the previous footing, giving him new consignments, and receiving new advances, the rule becomes imperative, and he must be held as having absolutely adopted the account. In such cases, however, it must always be understood that the account truly and honestly represents the actings of the factor.

In a case like the present, where the parties lived in the same city, and were in the habits of almost daily intercourse, the deten-

tion of the account for upwards of five weeks without objection, coupled with the fact of the plaintiff's dealing with the defendants upon the old footing, estops him from going into the question whether the sales had or had not been made at an inadequate price.

As to the third ground on which the plaintiff claims to charge the defendants, to wit, that they had on the 26th day of November, 1847, refused to furnish him with a further account and to deliver up the unsold goods, it seems to the Court to be without foundation. It is true that on that day the plaintiff demanded such account, and professed his readiness to satisfy any balance due the defendants; but it is equally true that at that time a part of the goods were on sale in Boston, where they had been shipped with his consent; this was assigned as a reason for the defendants not being able to render an account of sales subsequent to the 18th of October, but an assurance was given that the account should be furnished the 1st January, 1848. Nor did it appear in proof on what footing the plaintiff was ready to settle with the defendants; whether on the basis of the invoice value of the goods, or upon the basis of the prices for which they had been sold, and of which sales an account had been rendered to him on the 18th of the previous October. If the former, the demand was null, because coupled with a condition to which by law the defendants were not bound to conform.

And even if the demand was made accompanied with an offer to settle on the footing of the actual sales made by the defendants, yet the plaintiff could not withdraw his goods from the defendants without a payment, or an offer to pay not only their advances, but the commissions the defendants would have been entitled to receive on the sales. For the rule of law is this: If a principal consign goods to a factor for sale at a given rate of commission, on which he receives cash advances, in anticipation of sales, he cannot, at his mere pleasure, withdraw the sale of his goods from the factor, on the repayment of advances and interest.

The factor has an interest in making the sales and earning his commissions, which in general forms the effective consideration of his advances; and it does not rest in the power of the principal to deprive him of this advantage, without showing some substantial reason for so doing. And nothing, probably, would be deemed such a substantial reason, except such a state of facts as would have enabled the plaintiff to have sustained an action of trover or replevin against the defendants for the goods. There has been shown no such state of facts in the cause, as places the defendants in the

position that the detention of the goods for the security of their unsatisfied balance of account was so far unlawful as authorized the Master in charging them with the goods on hand and unsold, as if they had actually sold them, or become themselves the purchasers, which is the principle on which the account has been stated.

Decree that the report of the Master be set aside, and plaintiff's bill dismissed.